

**SIGNED this 05th day of February, 2014.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 13-50040-CAG |
| SHREE MAHALAXMI, INC. d/b/a SUPER 8 | § § § | |
| Debtor. | § § § | CHAPTER 11 |

### ORDER GRANTING, IN PART, DEBTOR'S OBJECTION TO CLAIM NO. 4

Before the Court is the Debtor's Amended Objection to Claim No. 4 of U.S. Bank National Association, as Trustee, Successor to State Street Bank and Trust Company, as Trustee for the Registered Holders of Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, Series 1996-C3, by and through CW Capital Asset Management LLC, Solely In Its Capacity as Special Servicer (ECF No. 126) (the "Objection") and Claimant's Response thereto (ECF No. 131). This Court conducted an evidentiary hearing on December 13, 2013, before taking the matter under advisement. The Court allowed each party to submit a supplementary brief in further support of their positions after the hearing. Debtor filed

its Supplementary Letter Brief (ECF No. 148) on January 2, 2014, and Claimant (hereinafter "the Trust") filed its Supplementary Letter Brief in Response (ECF No. 154) on January 20, 2014. The Court has reviewed the entire record before it, including all admitted exhibits and the weight of the testimony and credibility of all witnesses. The Court has also carefully considered all evidentiary objections raised and sustained in making its findings of fact.

Debtor originally objected to both the validity of the Trust's interests in the Debtor's assets including disputed issues regarding the Note and effectiveness of a new allonge, and the Trust's claim for pre-petition default interest. Debtor also filed an adversary proceeding (Adv. No. 13-05050-cag) to determine the disputed issues regarding the Note and effectiveness of a new allonge. At the hearing on Debtor's Objection, the Parties agreed to proceed only on Debtor's objection to the Trust's claim for pre-petition default interest while reserving the remaining Note and new allonge issues to be decided as part of the adversary proceeding. The Parties also filed a Joint Stipulation for the Objection to Claim Hearing on the morning of the hearing held December 13, 2013 (ECF No. 140). In accordance with the Parties' agreement, this Court shall only determine whether the Trust is entitled to pre-petition default interest at this time.

As an initial matter, the Court finds that it has jurisdiction over this proceeding under 28 U.S.C. §§ 157(b) and 1334 (2012). This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (B), in which the Court may enter a final order. Venue is proper under 28 U.S.C. § 1408. This matter is referred to the Court pursuant to the District's Standing Order of Reference.

## PROCEDURAL AND FACTUAL BACKGROUND

Debtor, Shree Mahalaxmi, Inc. d/b/a Super 8, is a Texas corporation that owns and

operates hotel property located at 3617 N. Pan Am Expressway, San Antonio, Bexar County, Texas 78219 (the "Collateral"). Claimant is U.S. Bank, National Association, as Trustee, successor to State Street Bank and Trust Company, as Trustee for the registered holders of Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, Series 1996-C2 (the "Trust"), represented by and through CW Capital Asset Management LLC, as special servicer.

## I.  *The Original Loan Transaction*

On August 23, 1996, Debtor received a loan from Merrill Lynch Credit Corporation ("Merrill Lynch") in the amount of $1,650,000 ("Loan"). In originating the loan, Debtor executed the following documents evidencing the indebtedness to Merrill Lynch in repayment of the loan: (1) a Promissory Note dated August 23, 1996, in the amount of $1,650,000 made for the benefit of Merrill Lynch ("Note")[1]; (2) a Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing dated August 23, 1996, for the benefit of Merrill Lynch and securing the Debtor's obligations under the Note by the Collateral ("Deed of Trust")[2]; and (3) an Absolute Assignment of Leases and Rents and Security Deposits dated August 23, 1996, in favor of Merrill Lynch ("ALR")[3]. These documents will be collectively referred to as the "Loan Documents."

After origination of the loan, the Trust now claims that it is entitled to enforce the Loan Documents as the owner. Because the parties have agreed to reserve their objections and arguments regarding the Note and effectiveness of a new allonge, the Court will assume, for

---

[1] The Note is admitted into evidence as "Exhibit C." The Court will refer to the "Note" rather than the exhibit throughout its Order.
[2] The Deed of Trust is admitted into evidence as "Exhibit G." The Court will refer to the "Deed of Trust" rather than the exhibit throughout its Order.
[3] The ALR is admitted into evidence as "Exhibit H." The Court will refer to the "ALR" rather than the exhibit throughout its Order.

purposes of this ruling on the Debtor's Objection to inclusion of pre-petition default interest, that the Trust is the appropriate party to enforce the Note.

II. *Placement of the Junior Liens on the Collateral*

After the origination of the loan with Merrill Lynch, Debtor further encumbered the Collateral by placing two junior liens on the Collateral both in favor of National Republic Bank of Chicago ("NRBC")[4]. On July 23, 2003, the Debtor placed the first junior lien on the Collateral in favor of NRBC in order to secure a $1,850,000 loan made to ADR Management which was recorded in the Bexar County records on July 24, 2003 ("First Junior Lien"). (Ex. J and Ex. M, Pg. 65, Ln. 5 – Pg. 66, Ln. 14). ADR Management is a separate corporation that owns and operates a Red Roof Inn in New Braunfels, Texas but shares some common ownership with the Debtor. (Ex. M, Pg. 63, Ln. 8-20). Through this common ownership, the Debtor signed the $1,850,000 note in favor NRBC and placed the First Junior Lien on the Collateral for the benefit of ADR Management. (Ex. M, Pg. 67, Ln. 24 – Pg. 70, Ln. 16). On October 15, 2003, the Debtor placed the second junior lien on the Collateral in favor of NRBC in order to secure a $325,000 loan made to ADR Management which was recorded in the Bexar County records on June 24, 2004 ("Second Junior Lien"). (Ex. K).

III. *Debtor's Bankruptcy Filing*

Debtor filed for Chapter 11 bankruptcy on January 7, 2013 ("Petition Date"). Debtor filed its Schedules and Statement of Financial Affairs on January 22, 2013 (ECF No. 38 and 39) listing a secured claim of $596,677.50 held by Wells Fargo Bank on account of the Note secured by the Collateral. The Trust filed its Original Proof of Claim on May 10, 2013 in the amount of

---

[4] In the exhibits admitted at the hearing, the Table of Contents lists the First Junior Lien recorded July 24, 2003 as "Exhibit J" and the Second Junior Lien recorded June 24, 2004 as "Exhibit K". However, under the tabs, these two exhibits have been inverted. For purposes of the record and for clarity, the First Junior Lien recorded July 24, 2003 will be referred to as "Exhibit J" and the Second Junior Lien recorded July 24, 2004 will be referred to as "Exhibit K".

$618,878.19 (Claim No. 4-1). On June 13, 2013, Debtor filed its Original Objection to Claim No. 4 of U.S. Bank (ECF No. 79) solely raising disputed issues regarding the Note and effectiveness of a new allonge.

Mr. Robert Flaundrau, a representative for the special servicer, testified that sometime soon after the Petition Date, the loan was referred to him for special servicing as a result of the Debtor's bankruptcy filing. Flaundrau testified that he took several actions at that point, including ordering an updated title report for the Collateral. Thereafter, in July 2013, the special servicer placed the Note up for auction. Flaundrau does not recall reviewing the updated title report at that time, although he testified it is his normal practice to do so. Flaundrau testified that he first became aware of the junior liens in favor of NRBC on the Collateral in late July or early August 2013, when an employee of the auction company notified him of their existence. On August 8, 2013, counsel for the Trust sent electronic correspondence to Debtor's counsel regarding the existence of the junior liens and the Trust filed its formal objection to the Debtor's First Amended Plan of Reorganization on August 9, 2013 (ECF No. 99). On August 15, 2013, the Trust amended its Proof of Claim to include pre-petition default interest, reasoning that placement of the junior liens on the Collateral was an Event of Default that entitled the Trust to pre-petition default interest from the date of default (Claim No. 4-2). The Amended Proof of Claim added pre-petition default interest, accruing from July 24, 2003 to the Petition Date, in the amount of $399,496.19 to the total claim amount. Debtor filed its Amended Objection to Claim No. 4 of U.S. Bank (ECF No. 126) on October 28, 2013, adding its objection to inclusion of pre-petition default interest. The Trust filed its Response to Debtor's Amended Objection on November 21, 2013 (ECF No. 131).

## PARTIES' CONTENTIONS

The central disagreement between the Parties is whether the terms of the Loan Documents allow the Trust to impose retroactive pre-petition default interest for the first time after the Petition Date. Debtor argues that inclusion of pre-petition default interest in the Trust's Proof of Claim is improper because: (1) the Loan Documents require the Trust to provide notice regarding any Event of Default to the Debtor before imposing default interest; (2) the Note itself does not provide for automatic accrual of default interest upon occurrence of an Event of Default; (3) the Loan Documents provide grace periods and an opportunity to cure this type of default event; and (4) to the extent the Trust may automatically impose default interest, the Trust's claim for default interest is barred by the applicable statute of limitations.

In response, the Trust argues that the Loan Documents, read as a whole, entitle it to impose default interest from the date of the Event of Default and do not require the Trust to provide any notice to the Debtor. Further, the Trust argues that only discovery of the Event of Default can trigger the statute of limitations or, in the alternative, the Debtor's subsequent payments on the debt tolled any statute of limitations. Additionally, the Trust asserts that the Loan Documents do not provide any grace periods for the type of default committed by the Debtor.

## ANALYSIS

The Court is of the opinion that: (1) allowance of pre-petition interest under § 502 of the Bankruptcy code relies on the underlying state law of Texas governing the Loan Documents; (2) the Debtor committed an Event of Default under the Loan Documents; (3) the Loan Documents allow imposition of default interest only if the Trust exercises its option to accelerate the debt upon an Event of Default; and (4) the Trust did not exercise its option to accelerate the debt

before the Petition Date. As such, the Court finds that the Trust's claim for default interest did not accrue pre-petition and it is therefore not entitled to include pre-petition default interest in its Proof of Claim.[5]

I. *Allowance of Pre-petition Interest under § 502 and Underlying Texas Contract Law*

Pre-petition claims for interest and fees are allowable as part of an underlying secured claim. See **In re Cummins Utility, L.P.**, 279 B.R. 195, 201 (Bankr. N.D. Tex. 2002). As such, 11 U.S.C. § 502[6] governs determination of allowance of any claim for pre-petition interest. Section 502 provides in pertinent part:

> (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.
>
> (b) . . . if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that –
>
> (2) such claim is for unmatured interest.

Claims amount determinations under § 502 generally require the Court to look to state law in order to make any determination regarding the substance of the claim. See **In re Moody Nat'l SHS Houston H, LLC**, 426 B.R. 667, 675 (Bankr. S.D. Tex. 2010) (citing **Travelers Cas. & Sur. Co. of America v. Pac. Gas & Elec. Co.**, 549 U.S. 443, 450-51 (2007)). The "touchstone of any claim is that there is an enforceable obligation of the debtor or an enforceable right to payment from the debtor." **Campbell v. Countrywide Home Loans, Inc.**, 545 F.3d 348, 353-54 (5th Cir. 2008) (citations omitted). If applicable state law deems a claim for pre-petition interest

---

[5] Given the Court's holding that the Trust did not accelerate the debt, it is not necessary for the Court to address any issues relating to the statute of limitations or applicable grace periods at this time. The Court also does not address any claims the Trust may have for post-petition default interest or any ability it may have to accelerate the debt post-petition.

[6] Unless otherwise noted, all references are to Title 11, U.S.C. *et. seq.*

7

unmatured or unearned on the Petition Date, § 502 disallows such claim. Accordingly, any pre-petition interest that has matured under applicable state law by the Petition Date is allowed under § 502 as part of the underlying secured claim. *See **Cummins***, 279 B.R. at 201; *see also **In re Auto Int'l Refrigeration***, 275 B.R. 789, 823 (Bankr. N.D. Tex. 2002), *rev'd on other grounds sub nom.* ***Mims v. Fidelity Funding, Inc.***, 307 B.R. 849 (N.D. Tex. 2002). The Court will construe the Loan Documents in accordance with the state law of Texas as provided for under the Note. *See* Note, § 4.20.[7]

Under Texas contract law, the intent of the parties in forming a contract is determined from the four corners of the contract itself unless there is an ambiguity in the contract. ***In re Indep. Am. Real Estate, Inc.***, 146 B.R. 546, 550 (1992) (citing ***Official Creditors Comm. of Stratford of Tex. v. Stratford of Tex.***, 635 F.2d 365 (5th Cir. 1981)). A contract is unambiguous if it can be given a definite or certain legal meaning and is not subject to two or more reasonable interpretations. ***J.M. Davidson, Inc. v. Webster***, 128 S.W.3d 223, 229 (Tex. 2003).

The Debtor urges the Court to interpret only the Note to determine under what circumstances default interest may be imposed upon the borrower. Under Texas law, however, the general rule is that "separate instruments or contracts executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together." ***Jones v. Kelley***, 614 S.W.2d 95, 98 (Tex. 1981). The Note, Deed of Trust and ALR were all executed at the same time, for the same purpose, and in the course of the same loan transaction on August 23, 1996. As such, the Court will interpret all the

---

[7] The Debtor relies heavily on cases from outside this jurisdiction to support its proposed construction of the Loan Documents. *See **Beal Bank v. Crystal Props., LTD (In re Crystal Props., LTD)***, 268 F.3d 743 (9th Cir. 2001); ***In re Lichtin/Wade, LLC***, 2012 WL 3260287 (Bankr. E.D.N.C. Aug. 8, 2012); ***In re Potts***, 2013 WL 5508429 (Bankr. D. Colo. Oct. 2, 2013). To the extent these cases rely on a federal common law imposition of notice requirements for acceleration, this Court rejects such reasoning. Rather, this Court finds that the underlying state law should govern determination of the Parties' substantive rights under the contract. *See **Cummins***, 279 B.R. at 201.

Loan Documents together as one contract.

    II.    *The Debtor Committed an Event of Default Under the Loan Documents.*

The Loan Documents clearly show that the Debtor caused an Event of Default to occur and it does not appear that the Debtor disputes this fact. Section 3.1 of the Note and Section 12.1 of the Deed of Trust define an "Event of Default." Under Section 12.1(p) of the Deed of Trust, it is an Event of Default "if Borrower shall be in default under any of the other terms, covenants, or conditions of the Note, this Deed of Trust or any other Loan Document, other than as set forth in (a) through (o) above . . . ." Section 3.1(e) of the Note also defines an Event of Default as a: "Breach or violation of any covenant or agreement set forth in any of the other Loan Documents or any other default thereunder (unless such default is cured within any applicable grace period set forth in the applicable Loan Document)."

Sections 2.6 and 9.1 of the Deed of Trust prohibit the borrower from further encumbering the Collateral in any part. Additionally, Section 14.1(g) of the Deed of Trust prohibits the borrower from incurring, creating or assuming any other debt outside of trade debt. Debtor breached its covenants not to further encumber the Collateral and not to incur further non-trade debt by placing the First and Second Junior Liens on the Collateral. Therefore, the Debtor caused an Event of Default to occur under either Section 3.1(e) of the Note or Section 12.1(p) of the Deed of Trust.[8]

    III.    *The Loan Documents Require Acceleration and Non-Payment Before Default Interest May Be Imposed.*

Construing the Loan Documents together as one contract, the Court finds that the Loan

---

[8] Although the Trust argues that the Event of Default occurred under Section 12.1(g) of the Note, that section provides for default only where a warranty or covenant made in the Loan Documents or any certificate, report, financial statement or other instrument or agreement furnished to the Lender "shall prove to be false or misleading in any respect." Section 12.1(g) applies only where a misrepresentation or falsehood is committed by the borrower and is not implicated by a change in circumstances, as is the case here by the recordation of the two junior liens.

9

Documents are not ambiguous and can reach a certain legal meaning with regards to the imposition of default interest. First, the Loan Documents condition the imposition of default interest on non-payment of an amount due on a certain date. Section 2.3 of the Note provides, in part, under the title "Default Rate":

> Should the . . . (ii) the Principal Amount or any part thereof, together with any other amounts due and payable hereunder, not be promptly paid on the Maturity Date or any earlier date when the same shall be due and payable (whether by acceleration or otherwise), then in such event, the rate of interest to be paid on the Principal Amount and all such other amounts shall be increased to the Default Rate and shall be computed from the date such amounts were initially due and payable through the date, if any, upon which such amounts are actually and fully paid . . . The foregoing provisions shall not be construed as a waiver by Holder of its right to pursue any other remedies available to it under the Deed of Trust or any other Loan Document, nor shall it be construed to limit in any way the application of the Default Rate.

Section 12.4 of the Deed of Trust also conditions imposition of the default rate of interest upon non-payment of an amount at a certain due date. Section 12.4 of the Deed of Trust provides, in part:

> <u>Interest After Default</u>. If any amount due under the Note, this Deed of Trust or any of the other Loan Documents is not paid within any applicable notice and grace period after same is due, whether such date is the stated due date, any accelerated due date or any other date or at any other time specified under any of the terms hereof or thereof, then in such event, Borrower shall pay interest on the entire outstanding and unpaid principal balance of the Debt from and after the date on which such amount first becomes due at the Default Rate of interest; and such interest shall be due and payable at such rate until the earlier of the cure of all Events of Default or the payment of the entire amount due to Lender, whether or not any action shall have been taken or proceeding commenced to recover the same or to sell the Property. . . .

Both Section 2.3 of the Note and Section 12.4 of the Deed of Trust provide for imposition of default interest if the debt is not paid by any stated due date such as the Maturity Date, an accelerated due date or any other date or time specified by the Loan Documents. Thus, the imposition of default interest is inextricably intertwined with default on a payment – whether at

an accelerated due date or otherwise.

Second, the Loan Documents provide the Trust with the *option* to accelerate the debt as a remedy for an Event of Default. Under Section 3.2 of the Note, the remedy for occurrence of an "Event of Default" is acceleration of the Note so that:

> the entire Principal Amount, accrued interest and all other sums due and payable hereunder, under the Deed of Trust and the other Loan Documents shall become immediately due and payable at the option of Holder, and Holder shall have the option to exercise any rights or remedies available to Holder hereunder or under the other Loan Documents, at law or in equity.

Likewise, Section 12.1 of the Deed of Trust provides, "The Debt shall become immediately due at the option of Lender upon any one or more of the following events ("Event of Default") . . . ."

Therefore, the Loan Documents provide that occurrence of an Event of Default under the Note or Deed of Trust gives rise to the option of the Lender to accelerate the debt immediately. Imposition of the default rate of interest, however, is not automatically imposed upon occurrence of an Event of Default that does not involve non-payment of an amount by a certain due date. Rather, the Trust must exercise its option to accelerate the debt upon occurrence of the Event of Default. Only if the borrower does not pay the amount due at the accelerated maturity date promptly may the Trust begin imposing the default rate of interest.

    IV.    <u>The Trust Did Not Exercise Its Option to Accelerate the Debt Pre-Petition.</u>

Texas state law provides for specific notice requirements that a Lender must satisfy in order to effectively accelerate a debt. Effective acceleration requires two actions by the Lender: (1) notice of intent to accelerate; and (2) notice of acceleration. **Holy Cross Church of God in Christ v. Wolf**, 44 S.W.3d 562, 566 (Tex. 2001) (citing **Shumway v. Horizon Credit Corp.**, 801 S.W.2d 890, 892 (Tex. 1991) and **Ogden v. Gibraltar Sav. Ass'n**, 640 S.W.2d 232, 233 (Tex. 1982)). Both of these notices must be "clear and unequivocal." **Holy Cross**, 44 S.W.3d at 566

11

(quoting *Shumway*, 801 S.W.2d at 893). Where the remedy of acceleration is optional, default does not automatically trigger acceleration of the debt but requires the Lender to clearly and unequivocally exercise its option. *See Holy Cross*, 44 S.W.3d at 566 ("If a note or deed of trust secured by real property contains an optional acceleration clause, default does not ipso facto start limitations running on the note. Rather, the action accrues only when the holder actually exercises its option to accelerate."); *see also Shumway*, 801 S.W.2d at 893 ("The harshness of the option of accelerating the maturity of an extended obligation requires both a strict reading of the terms of the option and notice to the debtor."); *see also* **Joy Corp. v. Nob Hill North Props., LTD**, 543 S.W.2d 691, 695 (Tex. Civ. App. – Tyler 1976, no writ) ("The exercise of an option to accelerate the entire balance of a debt is a harsh remedy. The courts in Texas have looked with disfavor upon the exercise of this power, since great inequity may result. It is incumbent on the mortgagee in order to avail himself of this right of acceleration, to make a clear, positive, and unequivocal declaration in some manner of the exercise thereof, followed by an affirmative action towards enforcing the declared intention.").

Parties to a contract may choose to waive the above notice requirement; however, such a waiver must also be clear and unequivocal. *See Shumway*, 801 S.W.2d at 893 (citing *Ogden*, 640 S.W.2d at 234). In *Shumway*, the Texas Supreme Court reasoned that allowing waiver of a borrower's right to notice by merely general terms would thwart the purpose of requiring clear and unequivocal notice of intent to accelerate and notice of acceleration at all. 801 S.W.2d at 893. The Texas Supreme Court further held that, to meet this exacting standard, the waiver provision "must state specifically and separately the rights surrendered." *Id.* Therefore, the Court in *Shumway* determined that waiver of "notice" or "notice of acceleration" would be sufficient to waive the requirement to provide a notice of acceleration but would be insufficient

to waive a borrower's right to receive a notice of intent to accelerate because it is a separate right. *Id.* at 893-94. Likewise, general waivers of "notice," "all notice," or "any notice whatsoever" lack the specificity to waive the borrower's two separate rights – (1) to notice of intent to accelerate and (2) to notice of acceleration. *Id.*

Here, the Trust did not effectively accelerate the debt before the Debtor filed its bankruptcy petition. Section 3.2 of the Note and Section 12.1 of the Deed of Trust both provide that the remedy for an Event of Default is acceleration at the *option* of the Trust. Therefore, the Trust must actually exercise its option to accelerate the debt in order for acceleration to be effective. The Trust does not argue that it sent any notices to the Debtor that would evidence the Trust's acceleration of the debt pre-petition. In fact, Flaundrau testified that the Trust was unaware of the Event of Default until after the Debtor's bankruptcy filing. As such, the only scenario in which the Trust may argue that the debt automatically accelerated at the time of the Event of Default is if the Loan Documents clearly and unequivocally waive the Debtor's separate rights to notice of intent to accelerate and notice of acceleration. *See* **Shumway**, 801 S.W.2d at 893-94.

> Section 4.17 of the Note provides:
>
> <u>Waiver of Notice</u>. Maker shall not be entitled to any notices of any nature whatsoever from Holder except with respect to matters for which this Note specifically and expressly provides for the giving of notice by Holder to Maker and except with respect to matters for which Maker, is not, pursuant to applicable legal requirements, permitted to waive the giving of notice. Maker hereby expressly waives the right to receive any notice from Holder with respect to any matter for which this Note does not specifically and expressly provide for the giving of notice by Holder to Maker.

The above waiver contained in the Note does not clearly and unequivocally waive the Debtor's two separate rights to notice of intent to accelerate and notice of acceleration. At best, the Section 4.17 waiver can only serve to waive the Debtor's right to a notice of acceleration

because the language is too general and non-specific to clearly and equivocally waive the Debtor's right to *both* forms of notice. Therefore, the Trust is at minimum required to provide the Debtor with a notice of intent to accelerate before it may consider the debt effectively accelerated under Texas law. *See Shumway*, 801 S.W.2d at 893-94. The Trust did not provide any notice of intent to accelerate the debt prior to the Debtor's bankruptcy filing. As such, the Trust did not accelerate the debt pre-petition and default interest was not triggered because the Debtor had not yet failed to pay the required amount by an accelerated due date.

The Trust cites three cases that, it asserts, allow a creditor to retroactively apply default interest to its proof of claim under similar Loan Documents as the ones at issue in this case. All three of these cases, however, are distinguishable in important ways to the case at hand. *See Southland Corp. v. Toronto Dominion (In re Southland)*, 160 F.3d 1054 (5th Cir. 1998); *Am. Capital Fin. Servs., Inc. v. Berry-Hill Galleries, Inc.*, 2010 WL 4227307, *6 (Bankr. S.D.N.Y. Oct. 19, 2010); *In re Coykendall*, 265 B.R. 859, 863-64 (Bankr. N.D. Ohio 2001). First, in *Southland Corp.*, although the Fifth Circuit did allow retroactive application of default interest after the bankruptcy filing, it did so because (1) the lender had sent out pre-petition notice of the higher interest rate; and (2) the loan documents provided for imposition of default interest upon notice, *not acceleration*. Likewise, in both *Berry-Hill* and *Coykendall*, the terms of the contract allowed for imposition of default interest upon default and did not require acceleration by the Lender.[9]

The fact that the Trust did not learn about the junior liens and additional debt until after the Petition Date is unfortunate because its security in the Collateral may now be lessened or

---

[9] The Trust also relied on the United States District Court for the District of Minnesota's recent decision in *Bowles Sub Parcel A, LLC v. CW Capital Asset Mgmt. LLC (In re Bowles Sub Parcel A, LLC)*, 2013 WL 6500130 (D. Minn. Dec. 11, 2013), to support its attempt to retroactively charge default interest from the Event of Default. That opinion, however, dealt with the enforceability of the default interest clause as liquidated damages under Minnesota state law and does not address the accrual of default interest absent pre-petition acceleration.

compromised. However, to allow the Trust to impose retroactive pre-petition default interest after the Petition Date would fly in the face of the terms of the Loan Documents that were drafted by the Lender and negotiated between the Parties. The Parties chose to structure the default interest provision of the Loan Documents to impose default interest only if the borrower failed to pay an amount by a certain due date. The Parties did not provide for the automatic imposition of default interest upon occurrence of any Event of Default. The Court will not rewrite the Parties' contract and will merely enforce the terms to which they originally agreed.

## CONCLUSION

For these reasons, it is ORDERED that Debtor's Amended Objection to Claim No. 4 of U.S. Bank National Association, as Trustee, Successor to State Street Bank and Trust Company, as Trustee for the Registered Holders of Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, Series 1996-C3, by and through CW Capital Asset Management LLC, Solely In Its Capacity as Special Servicer (ECF No. 126) is GRANTED, IN PART.

###