

**SIGNED this 15th day of December, 2014.**

**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | § | |
|---|---|---|
| IN RE: | § | CASE NO. 13-50040-CAG |
| | § | |
| SHREE MAHALAXMI, INC. d/b/a | § | |
| SUPER 8 | § | |
| | § | CHAPTER 11 |
| Debtor. | § | |

### MEMORANDUM OPINION

Came on to be considered the above-numbered bankruptcy case, and, in particular, the Trust's Motion for Allowance of Post-Petition Amounts and to Value the Collateral (ECF No. 204)[1] (the "Motion"), and Debtor's Objection (ECF No. 217). The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. § 1408(1). This matter is referred to this Court under the District's Standing Order of Reference. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B) (allowance or disallowance of claims against the estate) in which the Court may enter a final order. The Court notes that the Supreme Court's decision in **Stern v. Marshall**, 131 S. Ct. 2594 (2011), does not suggest or hold that the Court lacks authority to hear and enter final orders regarding a motion for allowance of post-

---

[1] Unless otherwise noted, references to documents on the docket for Bankruptcy Case No. 13-50040-cag shall be referred to by "ECF No."

petition amounts to an over-secured creditor or for valuation of collateral. The Court finds that this is a contested matter as defined under Federal Rule of Bankruptcy Procedure 9014. As such, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. The Court took this matter under advisement and finds that the Trust's Motion should be GRANTED in part, and DENIED in part.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

Debtor, Shree Mahalaxmi, Inc. d/b/a Super 8 ("Debtor"), is a Texas corporation that owns and operates hotel property located at 3617 N. Pan Am. Expressway, San Antonio, Bexar County, Texas 78219. Movant is U.S. Bank, National Association, as Trustee, successor to State Street Bank and Trust Company, as Trustee for the registered holders of Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, Series 1996-C2 (the "Trust"), represented by and through CW Capital Asset Management LLC, as special servicer.

On August 23, 1996, Debtor received a loan from Merrill Lynch Credit Corporation in the amount of $1,650,000 (the "Loan") (Joint Stipulation, p. 7). Debtor executed, *inter alia*, the following documents evidencing the indebtedness owed to Merrill Lynch in repayment of the Loan: (i) a Promissory Note dated August 23, 1996, in the principal amount of $1,650,000 made for the benefit of Merrill Lynch (the "Note"); (ii) a Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing for the benefit of Merrill Lynch and to secure the Debtor's obligations under the Note (the "Deed of Trust"); and (iii) an Absolute Assignment of Leases and Rents and Security Deposits dated August 23, 1996, in favor of Merrill Lynch (the "ALR") (Joint Stipulation, p. 7). The Note, Deed of Trust and ALR shall be collectively referred

---

[2] On September 17, 2014 – the day of the Confirmation Hearing for Debtor's Third Amended Chapter 11 Plan and the hearing on the instant Motion, the parties filed a Joint Stipulation of the Parties for Hearing to Consider Confirmation of the Debtor's Third Amended Plan of Reorganization and Motion for Allowance of Post-Petition Amounts and to Value Collateral (ECF No. 220). For purposes of this Memorandum Opinion, the Court shall attribute the stipulations of the parties by citing to "Joint Stipulation."

to herein as the "Loan Documents." The Trust is the holder and owner of the Loan Documents by virtue of, among other things, an Assignment of Deed of Trust, Assignment of Rents and Fixture Filing and Assignment of Assignment of Rents and Leases dated May 9, 1997 (the "DOT/ALR Assignment") (Joint Stipulation, p. 7). Additionally, the Court entered an Order Granting the Trust's Motion for Summary Judgment and Dismissing Adversary Proceeding with Prejudice, (Adv. ECF No. 21)[3], which determined that: (i) the Trust is the holder of the Note and the other Loan Documents; and (ii) the Trust is the senior secured lender holding a valid and perfected first priority lien against the Property.

Debtor filed its Chapter 11 bankruptcy case on January 7, 2013, in the Western District of Texas, San Antonio Division. On or about February 13, 2013, the Trust's counsel furnished copies of the Loan Documents to Debtor, along with a copy of an allonge dated September 6, 1996, made by Southern California Health Care Associates, Limited Partnership and Casa Del Norte Owners Association to First Union National Bank of North Carolina in connection with a promissory note in the amount of $9,233,000 (the "Wrong Allonge") (*See* Defendant's Answer, Adv. ECF No. 4). Initially, the Trust did not provide Debtor with an allonge relating to the Note. On March 26, 2013, the Court entered an Agreed Final Order on Debtor's Cash Collateral Motion which granted Debtor until May 25, 2013, to investigate and examine the validity and enforceability of the Trust's lien (ECF No. 67).

On May 10, 2013, the Trust filed its Proof of Claim asserting a secured claim on the basis that the Trust was the current holder of the Note pursuant to a series of assignments (Claim No. 4-1). Thereafter, on June 13, 2013, Debtor filed its Objection to the Trust's Proof of Claim asserting that it had repeatedly requested a correct allonge evidencing the assignment of the Note

---

[3] Unless otherwise noted, references to documents on the docket for Adversary Case No. 13-05050-cag shall be referred to by "Adv. ECF No."

to the Trust but had not received one to date (ECF No. 79). Also on June 13, 2013, Debtor filed an adversary proceeding to determine the extent, validity and priority of the Trust's liens on the Property. Debtor's sole allegation was to determine whether the Trust had a valid lien on the Property accounting for the transfers of the Loan Documents after the Loan's origination (Adv. No. 13-05050-cag) (the "Adversary Proceeding"). On July 11, 2013, the Trust provided a Replacement Allonge[4] which evidenced transfer of the Note to the Trust (ECF No. 92, Ex. C).

The Trust then filed an Amended Proof of Claim on August 15, 2013, after learning that Debtor had placed a second lien on the Property—a violation of the covenants in the Deed of Trust and Note (Claim No. 4-2).[5] The Trust, in their Amended Proof of Claim, sought pre-petition default interest as a consequence of Debtor's violation of the Loan Documents. Debtor responded by filing an Amended Objection to Claim (ECF No. 126), which re-asserted its objection to the validity of the Trust's lien in Debtor's assets by challenging the capacity in which the Replacement Allonge was created and additionally, disputed the Trust's added claim for pre-petition default interest.

On or about November 15, 2013, the Trust filed a Motion for Summary Judgment in the Adversary Proceeding, asserting that there was no dispute of material fact regarding the validity of the Replacement Allonge and the Trust's lien (Adv. ECF No. 9). The Trust argued that, prior to the bankruptcy case, there was no disagreement over the Trust's ownership of and ability to enforce the Note. Rather, the Trust argued that only because the Wrong Allonge was provided initially was the issue of lien validity presented. The Trust further stated that, since a Replacement Allonge was provided to the Debtor indicating the assignment of Debtor's lien to the Trust, all issues regarding the Trust's ownership and enforceability of the lien were resolved.

---

[4] The original allonge could not be located in the Trust's loan file.
[5] *See* Order Granting, in part, Debtor's Objection to Claim No. 4 (ECF No. 157).

Debtor filed a Response (Adv. ECF No. 10), and the Court held a hearing on the Motion for Summary Judgment. On May 6, 2014, the Court entered an Order Granting the Trust's Motion for Summary Judgment and Dismissing the Adversary Proceeding (Adv. ECF No. 20).

On August 11, 2014, Debtor filed its Third Amended Chapter 11 Plan and Disclosure Statement (ECF Nos. 198 and 199). The Trust filed its Motion for Allowance of Post-Petition Amounts and to Value the Collateral on August 22, 2014 (ECF No. 204). The Trust also filed its Objection to the Debtor's Third Amended Plan of Reorganization on September 8, 2014 (ECF No. 211). Debtor filed its Response to the Trust's Motion for Allowance of Post-Petition Amounts and to Value the Collateral on September 15, 2014 (ECF No. 217). The Court confirmed the Debtor's Third Amended Chapter 13 Plan at the hearing held September 17, 2014, subject to compliance with this Court's decision regarding the Trust's Motion for Allowance of Post-Petition Amounts and to Value the Collateral. After a hearing held that same day, the Court took the Trust's Motion for Allowance of Post-Petition Amounts and to Value the Collateral, and Debtor's Response thereto, under advisement.

The Trust is represented by lead counsel, Venable LLP, located in Baltimore, Maryland and by local counsel, Rosenthal Pauerstein Sandoloski Agather LLP, located in San Antonio, Texas. The blended rates for the Trust's counsel are: $470 an hour for lead counsel; and $253 an hour for local counsel.

At the time of the hearing, the parties also stipulated to the following calculations for purposes of the Trust's Motion (Joint Stipulation, p. 7-8):

(1) The post-petition contract rate of interest at the Note rate of 10.04% has accrued from the Petition Date through the Confirmation Hearing Date and will total $103,105.76.

(2) If allowed, the post-petition default interest at the default rate of 4.00% has accrued from the Petition Date through the Confirmation Hearing Date and will total $41,038.15.

5

(3)  If late charges are allowed, the charge for a monthly payment of $15,699.61 is $15,699.91, and charge for a monthly payment of $24,368.06 is $24,368.06.

(4)  The stipulated value of the Property is at least equal to $1,200,000.

### PARTIES' CONTENTIONS

The Trust asserts that, because it is an over-secured creditor, § 506(b)[6] of the Bankruptcy Code allows it to recover attorneys' fees and costs.  The Trust also asserts that it is entitled to impose a post-petition default rate of interest.  Debtor contends that the Trust is entitled only to reasonable attorneys' fees and costs and that the amount currently sought by the Trust is unreasonable, under the ***Johnson***[7] factors.  Debtor also objects to the Trust's attempt to impose post-petition default interest.  Specifically, Debtor argues:

(1)  the total amount of time expended by the Trust's two law firms is not reasonable and examples of duplicative and excessive time spent by the Trust's counsel is evident in the invoices that have been provided;

(2)  certain issues in this case were unexpected but were by no means more difficult than average;

(3)  because no novel issues were raised, there was no need for the Trust to retain two law firms in this single asset case and local counsel was well-skilled to handle this matter;

(4)  the customary fee and reasonableness of the hourly rate charged by the Trust's lead counsel is significantly above the normal fee for representation in this type of case in Texas;

(5)  the amount of time involved compared with the results obtained by the Trust are unreasonable and Debtor should not be charged for a problem directly created by the Trust in providing the Wrong Allonge; nor should Debtor be charged for the Trust's unsuccessful attempt to add pre-petition default interest;

---

[6] Unless otherwise noted, all references are to Title 11, U.S.C. *et seq.*
[7] ***Johnson v. Georgia Highway Exp., Inc.***, 488 F.2d 714 (5th Cir. 1974).

(6)  the Trust's requested amount in attorneys' fees is outside the range of other awards and fees in similar cases where the first lien holder is over-secured;

(7)  the Trust has included fees and expenses that are not compensable such as: fees related to litigation against third-party, non-debtor guarantors; full-time fees for the travel of its attorneys; and excessively high billing rates for clerical and ministerial tasks;

(8)  the Trusts' travel expenses, such as airfare, are unreasonable;

(9)  Debtor should not be charged for an appraisal that was ordered by the Trust and that was not produced to Debtor; and

(10)  the Trust is not entitled to collect post-petition default interest or late charges, pursuant to the terms of the Loan Documents.

## DISCUSSION

Section 506(b) of the Bankruptcy Code provides,

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C.A. § 506(b) (West 2012).  The statute, therefore, provides four basic requirements for allowance of fees, costs or charges to a secured creditor: "(1) the claim must be an allowed secured claim; (2) the creditor holding the claim must be over-secured; (3) the entitlement to fees [costs or charges] must be provided for under some agreement or state statute; and (4) the fees [costs or charges] sought must be reasonable." *In re Pan Am. Gen. Hosp., LLC*, 385 B.R. 855, 862 (Bankr. W.D. Tex. 2008) (citing *Kord Enters. II v. Cal. Commerce Bank (In re Kord Enters. II)*, 139 F.3d 684, 687 (9th Cir.1998)); *see In re Valdez*, 324 B.R. 296, 299-300 (Bankr. S.D. Tex. 2005) (citations omitted); *In re Jack Kline Co.*, 440 B.R. 712, 744 (Bankr. S.D. Tex. 2010) (citation omitted).

7

The first two requirements of § 506(b) are easily addressed in the case of all fees, costs and charges sought by the Trust.  First, the Court has already determined that the Trust is a secured creditor of Debtor and holds an allowed secured claim by way of its first priority lien against the Property.  *See* Order Granting the Trust's Motion for Summary Judgment and Dismissing Adversary Proceeding with Prejudice (Adv. ECF No. 20).  Second, based on the agreed valuation of the Property to be at least equal to $1,200,000.00, the Trust's claim of $618,878.19 is over-secured (*See* Claim No. 4-1; Joint Stipulation, p. 8).  The Court must therefore address Debtor's objections based on the third and fourth requirements that fees, costs and charges sought be provided for by the agreement or State statute, and that the fees, costs and charges sought are reasonable.

## I.     Allowance of Attorneys' Fees

The Trust and Debtor agree that, under § 506(b), the Trust is entitled to attorneys' fees and expenses, but the reasonableness of the amount of attorneys' fees and expenses sought by the Trust is in dispute.[8]  The Trust seeks total attorneys' fees and expenses of $335,150.15 for services from January 11, 2013, through September 9, 2014, plus estimated fees and expenses of $20,000.00 through the Effective Date of Plan.[9]

---

[8] Section 4.7 of the Note allows the Trust to recover attorneys' fees stating:

> All costs and expenses of collection incurred by [the Trust] . . . including, without limitation, reasonable attorneys' fees and disbursements and including all costs and expenses incurred in connection with the pursuit by [the Trust] of any of its rights of remedies hereunder, under the Deed of Trust or any of the other Loan Documents . . . whether or not suit on this Note, on any of the other Loan Documents or any other foreclosure proceeding is filed, or incurred by [the Trust] in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Note or any other Loan Document, or to protect the lien of the Deed of Trust or any of the Loan Documents . . .

(Trust's Ex. A, p. 17).  Accordingly, the Trust's right to fees, costs and charges is acknowledged by an agreement as required by § 506(b) of the Bankruptcy Code.

[9] Of this amount, $282,419.87 is attributed to lead counsel and $52,730.28 is attributed to local counsel.  Local counsel estimates incurring additional fees and expenses of $3,750.00 from August 31, 2014 through the Effective

The reasonableness of post-petition attorneys' fees are tested under federal law. *See **In re Pan Am. Gen. Hosp.***, 385 B.R. at 868. In the Fifth Circuit, a three-step approach is used to determine the reasonableness of attorneys' fees for over-secured creditors: "(1) determine the nature and extent of the services supplied by the attorney with reference to the time and labor records submitted; (2) ascertain the value of the services; and (3) briefly explain the findings and the reasons upon which the award is based." ***In re Pan Am. Gen. Hosp.,*** 385 B.R. at 868 (citing ***In re Hudson Shipbuilders, Inc.***, 794 F.2d 1051, 1058 (5th Cir. 1986)). Additionally, a court reviewing the reasonableness of a secured creditor's fees should consider the twelve ***Johnson*** factors, "the circumstances surrounding the case, the manner of its administration", and whether duplication of services occurred. ***In re Pan Am. Gen. Hosp.***, 385 B.R. at 869; *see also **In re Cummins Utility, L.P.,*** 279 B.R. at 204 (quoting ***Chase Manhattan Bank, N.A. v. Wonder Corp. of Am.,*** 82 B.R. 186, 191 (D. Conn. 1988)).

The factors set out in ***Johnson*** include: (1) time and labor required, (2) novelty and difficulty of the questions, (3) skill requisite to perform the legal service properly, (4) preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) undesirability of the case, (10) experience, reputation and ability of attorneys, (11) nature and length of the professional relationship with the client, and (12) awards in similar cases. *See **Johnson v. Georgia Highway Exp., Inc.***, 488 F.2d 714, 717-19 (5th Cir. 1974) (identifying the twelve factors that are known

---

Date of the Plan and lead counsel estimates incurring additional fees and expenses of $16,250.00 from September 9, 2014 through the Effective Date of the Plan.

as the *Johnson* factors).[10]  It is the over-secured creditor who has the burden of proving the fees it seeks are reasonable.  *See **In re Pan Am. Gen. Hosp., LLC**,* 385 B.R. at 869.

     A.     *Time and Labor, Novelty and Difficulty of the Questions, and Skill Requisite to Perform Legal Services Properly*

As an initial matter, the Court notes that, according to the Fifth Circuit, "courts have broad discretion in awarding fees."  *See **In re Babcock & Wilcox Co.**,* 526 F.3d 824, 828 (5th Cir. 2008) (citation omitted).   Nonetheless, Debtor asserts the amount of time expended throughout the duration of this matter by the Trusts' two law firms is unreasonable, duplicative and excessive.  Debtor specifically contests the following time entries:

1. 10.9 hours for the preparation of a 10-page objection to use of cash collateral by lead counsel and an additional 1.3 hours billed by local counsel for the same objection;

2. 14.4 hours for the preparation of a 13-page amended response to a claim objection by lead counsel and an additional 1.2 hours billed by local counsel for the same response;

3. 29.4 hours for the preparation of a 5-page reply brief on the issue of pre-petition default interest by lead counsel, which the Trust did not prevail on; and

4. 44.2 hours addressing issues related to third-party non-debtor guarantors by lead counsel and an additional 94.5 hours billed by local counsel for the same guaranty issues.

Furthermore, Debtor argues that this matter was by no means more difficult than an average single asset case and there was no need for the Trust to retain two law firms.

In ***Pan American*,** the court addressed the reasonableness of having multiple attorneys assigned to the same matter.  385 B.R. at 873.  The debtor in ***Pan American*** argued that it was

---

[10] Debtor challenges the reasonableness of the Trusts attorneys' fees and expenses by specifically, questioning Johnson factors (1), (2), (3), (5), (8), and (12).

unreasonable to assign two attorneys[11] to an over-secured creditor. *Id*. The *Pan American* court, stated it was not in the position to determine the number of attorneys that should be allocated to a particular matter and the allocation of multiple attorneys to a particular matter is permitted, if it relates to the best interest of the client. *Id*. The court further stated that only when the work appears unnecessarily duplicative should the court look into the reasonableness of retaining two firms. *Id*. The *Pan American* court recognized that intra-firm conferences may lead to unnecessary and duplicative time being billed, especially when the firm has failed to explain the need for those conferences. *Id*. Ultimately the court held that no evidence of intra-firm communications was presented and, despite contrary arguments made by the debtor, "having two attorneys kept apprised of the case may prove to be beneficial to all parties in some circumstances." *Id*.

The reasoning in *Pan American* supports the reasonableness of the Trust's decision to retain two firms and the time expended by both those firms. During the hearing, the Trust noted that local counsel was obtained in order to confirm that the local rules and service requirements were being met. Moreover, the hours Debtor disputes as being duplicative (1.3 hours and 1.2 hours) are minimal and are consistent with the Trust's assertion that local counsel reviewed documents for compliance with the local rules. Absent any evidence to the contrary, no further inquiry into the reasonableness of retaining multiple attorneys' is needed.

Additionally, Debtor's assertion that the amount of hours spent on the guaranty action by the Trust is unreasonable fails to acknowledge that lead counsel did draft and file the petition in the guaranty action, while local counsel litigated the matter.[12] As a result, significantly more time was expended by local counsel in the guaranty action, while lead counsel was kept apprised

---

[11] Both attorneys assigned to the matter had over 25 years of experience. *In re Pan Am. Gen. Hosp., LLC*, 385 B.R. at 873 n.29.

[12] Local counsel litigated the guaranty action because they were better equipped to argue in a Texas state court.

of the status and was in communication with the client. Also, the Trust asserts that Debtor did not borrow money from a local banking institution, but chose to borrow from a national financing system. Accordingly, Debtor should have expected a national firm that represents special servicers, such as Venable LLP, to represent the Trust. The Court agrees with the Trust's arguments that national representation by a firm that specializes in representing special servicers should have been expected when borrowing money from a national financing system. Further, the need for local counsel should have been apparent to Debtor.

B.     *Customary Fee and Reasonableness of Attorneys' Hourly Rates*

Debtor argues the blended rate of $470 an hour for the Trust's lead counsel is above the normal fee for this geographic area. Furthermore, Debtor states that the blended rate of $253 an hour that local counsel charges is a better representation of the rate of billing in a single asset case in Texas. The Court disagrees.

In *In re Temple Retirement Community*, the bankruptcy court stated that "[t]he community whose standard is applied to attorneys' fees in most civil litigation is normally presumed to be the local community in which services are rendered." 97 B.R. 333, 342 (Bankr. W.D. Tex. 1989) (citations omitted). The court went on to note, however, that "[m]any bankruptcy cases are often more regional or even national than they are local in scope, so that looking solely to the local community's range of rates would impose an unnecessarily parochial cap on the case." *Id.*; *see also In re Pan Am. Gen. Hosp.*, 385 B.R. at 874; *In re El Paso Refinery, L.P.*, 257 B.R. 809, 832 (Bankr. W.D. Tex. 2000).

In the non-bankruptcy case of *Hopwood v. Texas*, the Fifth Circuit affirmed a reduction of non-local appellate counsel's fees stating that "[h]ourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that lions at the bar may command." 236 F.3d 256, 281 (5th Cir. 2000). The district court in that case had reasoned that

the previously-retained local counsel had "provided competent and skilled representation" and would have been able to maintain that degree of competence had it remained the primary counsel. *Id.* Thus, the court saw no reason to warrant employment of non-local counsel at much higher hourly rates and reduced the fee award. *Id.* Relying on the Fifth Circuit in *Hopwood*, the District Court for the Western District of Texas in *Compass Bank v. Vey Finance, LLC*, nonetheless, held that attorney rates ranging from $200 to $465 per hour and billing rates of $110 per hour for paralegals were reasonable and reflected the market rates in the San Antonio and Austin area for certain types of litigation. No. EP-11-CV-359-PRM, 2012 WL 2397445, at *2 (W.D. Tex. June 25, 2012) (quoting *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir.2000) ("the attorneys' fees calculus is a fact-intensive one and its character varies from case to case.")).

Debtor chose to borrow money from a national financing institution that is represented by Venable LLP, a national firm that specializes in the representation of special servicers. With its choice to borrow from a national financing institution, Debtor should expect that the representation by a national firm would require national fee rates. Additionally, it has been noted more than once that bankruptcy matters are more likely to involve matters that are national rather than purely local in scope. *In re Pan Am. Gen. Hosp.*, 385 B.R. at 874; *In re Temple Retirement Cmty., Inc.,* 97 B.R. at 342. Further, although a blended rate of $470 an hour is above the average for Bexar County, it is not so uncommon as to find it unreasonable. *See e.g. Compass Bank*, 2012 WL at *2.

Debtor's attorney provides no evidence other than her own testimony to indicate that lead counsel's blended rate would be hard-pressed to find and unreasonable. Lead counsel works for a national firm and has years of experience in handling the representation of special services, while local counsel's blended rate is a reflection of an associate with four to five years'

experience in the San Antonio area. The Court finds that the blended rates of $470 per hour for lead counsel and $253 per hour for local counsel are reasonable fees to be charged in this case.

C.    *Reasonableness of Attorneys' Fees During Travel & Travel Expenses*

Debtor argues that the Trust should not be reimbursed for fees during travel at the billed full-time rate instead of the customary half-time rate. Debtor also argues that the Trust's travel expenses are unreasonable. The Fifth Circuit has stated that there is no consensus whether the hourly rate an attorney should charge for the work done during travel time is the normal rate or one-half the rate. *See **In re Babcock & Wilcox Co.***, 526 F.3d 824, 828 (5th Cir. 2008) (acknowledging courts have held that, under § 330, travel time can be billed at the full rate). *Compare **In re Unger & Assocs., Inc.**,* 277 B.R. 694, 698 (Bankr. E.D. Tex. 2001) (finding that customary practice in the Eastern District of Texas was to bill travel time at half of the hourly rate) and ***In re Anderson Grain Corp.***,* 222 B.R. 528, 532 (Bankr. N.D. Tex. 1998) (finding that one-half hourly rate for time spent actually working on a matter while travelling is more than adequate compensation given the number of distractions to consider while travelling), *with **In re Matter of Cano**,* 122 B.R. 812, 813 (Bankr. N.D. Ga. 1991) (finding that billing at the full hourly rate during travel is permissible so long as the fees are reasonable because attorneys lose the opportunity to engage in other billable professional work while travelling). Additionally, the Fifth Circuit held that the only clear principle is that broad discretion is given to courts when awarding fees. *See **In re Babcock***, 526 F.3d at 828. Although the Fifth Circuit concluded travel time could be billed at a full-time or one-half rate, this Court is of the opinion that travel time should be billed at a half rate. The Court finds that lead counsel billed 24.7 hours of travel attributed to this case at a rate of $545 per hour and 24.9 hours of travel at a rate of $570 per hour for a total of $27,654.50. This amount shall be reduced to $13,827.25 to reflect billing at half-rate for time spent in travel.

14

Debtor also contends that certain travel expenses incurred by the Trust were unreasonable, such as the $1,000 and $2,000 range per airfare ticket. During the hearing on the Trust's Motion, the Trust addressed Debtor's contentions and stated that it is the policy of Venable LLP to purchase refundable airfare tickets in an effort to save on expenses overall because bankruptcy hearings are often cancelled or rescheduled with little notice. At the hearing, the Court stated on the record held that the Trust's travel expenses for airfare and hotel were reasonable, and the Court reiterates that holding in its opinion now. The Trust is therefore awarded the full amount of its requested travel expenses.

D.    *Amount Involved and Results Obtained; Non-Compensable Services*

Debtor cites to ***In re Brunel***, 54 B.R. 462 (Bankr. D. Colo. 1985)**,** to argue that the Trust's fees attributed to the guaranty action pursued against third-party non-debtor guarantors are not reasonable because those fees were not incurred by protecting the secured creditor's rights in the collateral. Likewise, Debtor argues that the Trust may not recover fees for its unsuccessful attempt to add pre-petition default interest because there was no reasonable basis for the Trust's claim. Additionally, Debtor contends that, because the Trust initially produced the Wrong Allonge, it was necessary for Debtor to raise issues pertaining to the validity of the Trust's lien in an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001(2). Therefore, as a consequence of the Trust's own failure to maintain its files, the time and expenses expended by the Trust to replace the incorrect allonge and prove the validity of its lien should not be charged to Debtor's estate.

First, the Court finds that the Trust is entitled to recover its fees attributed to the guaranty action and its unsuccessful attempt to collect pre-petition default interest. In determining whether fees are reasonable pursuant to § 506(b), the Court must independently assess two questions: (1) whether the fees and costs claimed are reasonable amounts; and (2) whether the

15

filing of the action or motion was reasonable under the circumstances. *In re Valdez*, 324 B.R. 296, 300 (Bankr. S.D. Tex. 2005) (determining whether fees should be awarding to an over-secured creditor for filing a motion for relief from stay under §362); *see also* *In re Brunel*, 54 B.R. at 464. "Section 506(b) does not differentiate between when a movant wins or loses a claim, but only that the fees and costs must be reasonable." *Id.*

In *In re Valdez*, the court found that fees should not be awarded to an over-secured creditor for the filing of a motion to lift stay where the debtor was not in default and retained substantial equity in the collateral. *Id.* at 301. That court found that the action taken by the over-secured creditor was unreasonable and unnecessary and thus, disallowed the creditor's fees. *Id.* (noting that filing a motion to lift stay is ordinarily a prudent action when the debtor is in default and that failure to file such a motion in that instance may be irresponsible by failing to protect the collateral). Conversely, in *In re Brunel* – the case relied upon by Debtor, the court allowed the over-secured creditor to recover fees and costs for the filing of its partially successful motion to lift stay. 54 B.R. at 465-66. The court in *In re Brunel* based its award on the fact that the relief from stay was reasonably sought in order to protect the over-secured creditor's rights. *Id.* at 464-66 (holding that the terms of the deed of trust entitled the creditor to "all costs and expenses incurred in any proceeding . . . in which the beneficiary may be obliged to defend or protect its rights or lien").

Here, the Trust seeks to recover for its fees incurred in the guaranty action and in its action to impose pre-petition default interest. Debtor improperly encumbered the Property with junior liens in violation of its covenants in the Loan Documents. By Debtor's violation of its covenants, the Trust was entitled and forced to file a guaranty action against the third-party guarantors in order to protect its interest in the Property and protect its rights. As such, pursuant to Section 4.7 of the Note, the Court finds that the Trust's fees and actions taken in the guaranty

16

action are reasonable and may be allowed under § 506(b). Likewise, although unsuccessful, the Trust's attempt to impost pre-petition default interest was not an unreasonable action. In fact, failure of counsel to pursue pre-petition default interest could be considered commercially irresponsible in other circumstances because Debtor itself jeopardized the Trust's interest in the Property by encumbering it with junior liens. The fact that the Trust's attempt was unsuccessful is not dispositive of the issue of attorneys' fees. Rather, the Court must base its ruling on whether the actions and fees incurred were reasonable. *See In re Valdez*, 324 B.R. at 301; *In re Brunel*, 54 B.R. at 465. The Court finds that the Trust's actions and fees in pursuing pre-petition default interest were reasonable. As such, the Court holds that the Trust's fees incurred in the guaranty action and action for pre-petition default interest are allowed under § 506(b).

Second, with respect to the Trust's fees attributed to the Wrong Allonge issue and validity of its lien, the Court finds that the Trust is entitled to recover only the fees and expenses incurred in the adversary proceeding *after* the Replacement Allonge was provided to the Debtor. The Trust provided Debtor's counsel with a copy of the Loan Documents and Wrong Allonge on February 13, 2013. Because the Trust provided an incorrect allonge to Debtor, the Trust's lien validity was questioned and Debtor was forced to file an adversary proceeding on June 13, 2013. The Trust did not provide the Replacement Allonge until July 11, 2013. Prior to the adversary proceeding, there was no dispute over the Trust's ownership and ability to enforce the Note. After the Replacement Allonge was provided to Debtor, the Court granted the Trust's Motion for Summary Judgment on May 6, 2014.

Initially, the adversary proceeding was a result of the Trust's failure to provide the correct allonge to Debtor. Additionally, several months passed before Debtor filed the adversary proceeding, allowing the Trust ample time to obtain the correct allonge. Once the Debtor received the Replacement Allonge, all issues regarding the Trust's lien validity should have been

17

settled and Debtor should have dismissed the adversary proceeding. Debtor, however, continued to question the validity of the Trust's lien and the Replacement Allonge. As a result, it was not until the Trust's Motion for Summary Judgment was granted that the adversary proceeding was dismissed. Given these facts, the Court finds that the Trust should not be compensated for its fees and expenses relating to the Wrong Allonge before the time that the Replacement Allonge was provided to Debtor. The Court finds that the Trust should, however, be compensated for its fees and expenses incurred in protecting the validity of its lien once the Replacement Allonge had been provided to Debtor. Debtor chose to continue the adversary proceeding once the Replacement Allonge was provided, and the Trust is permitted to collect the fees and expenses it incurred in protecting the validity of its lien after that point. Accordingly, the Trust's fee application will be reduced in the amount of $7,262.00 for time spent on the lien avoidance litigation prior to the Replacement Allonge being provided to Debtor on July 11, 2013.

## II.     Allowance of Reimbursement of Appraisal

Debtor asserts that it would be unreasonable to require debtor's estate to reimburse the Trust for the cost of the appraisal in the amount of $9,750.00. Debtor states that it requested a copy of the appraisal in numerous discovery requests and has still not received a copy to date. For this reason, Debtor argues that charging the estate for an appraisal it never even received would be unreasonable. The Trust agrees that Debtor sent discovery requesting a copy of the appraisal and that no appraisal was provided to Debtor. It is the Trust's contention that the appraisal was solely for in-house purposes of the Trust and its governing documents. The Trust further contends that, under the Loan Documents, an appraisal is not required. Additionally, the Trust states that, from the beginning of Debtor's bankruptcy case, it was known that its claim was over-secured and value of the Property was never really an issue, and as such, Debtor does not need a copy of the appraisal. The Court notes that Section 4.7 of the Note provides for

18

reimbursement of cost of the appraisal if it is considered an expense of collection. Therefore, the Court must determine whether the cost of the appraisal is reasonable under the fourth requirement of § 506(b).

When requesting fees, costs or charges under § 506(b), the burden is on the over-secured creditor to prove the reasonableness of its costs. *See In re Pan Am. Gen. Hosp.*, 385 B.R. at 869. Courts have found appraisal costs allowable under § 506(b) only where the appraisal served a useful purpose to protect the creditor's security interest or rights. *See e.g., In re Dalessio*, 74 B.R. 721, 724 (B.A.P. 9th Cir. 1987) (holding an appraisal fee was reasonable where the creditor needed an appraisal to assess whether its security interest was jeopardized). Where an appraisal, however, does not serve a purpose to protect the creditor's security interest or rights, court generally do not allow reimbursement of the appraisal fees under § 506(b). *See e.g., In re Maywood*, 210 B.R. 91, 92 (Bankr. N.D. Tex. 1997) (holding that, although an updated appraisal on debtor's property may have been desirable, an appraisal on property belonging to debtor's neighbors was not necessary nor reasonable and did not benefit the bankruptcy case); *In re Danise*, 112 B.R. 492, 497 (Bankr. D. Conn. 1990) (holding reimbursement of appraisal fees not allowed under § 506(b) where no evidence was provided to show that the appraisals would have served any useful purpose).

Upon the Trust's own admission, the value of the property was never at issue and the purpose of the appraisal was only for the Trust's in-house use. The Court, therefore, finds that the cost of the appraisal is not a reasonable expense because it does not serve any useful purpose to protect the creditor's interest or otherwise aid the bankruptcy case. The Trust failed to present evidence to the Court regarding the need or use for two appraisals dated March 19, 2013, and February 5, 2014, or that they were done to protect the Trust's interest in the Property. Additionally, although the fact that the Trust never provided a copy of the appraisal to Debtor

despite multiple discovery requests is not dispositive of the issue of reasonableness, it speaks to the lack of usefulness of an appraisal in this case. Accordingly, the Trust's request for appraisal costs in the amount of $9,750.00 is disallowed in its entirety.

## III. Attorneys' Fees for Defending § 506(b) Motion

Debtor argues that, under the Fifth Circuit's recent opinion in *In re ASARCO, L.L.C.*, the Trust is not entitled to recover reasonable attorney's fees and costs for defending its fee application. *See* 751 F.3d 291, 302 (5th Cir. 2014), *cert. granted*, 135 S. Ct. 44 (Oct. 2, 2014). In *In re Asarco LLC,* debtor's counsel worked on litigation matters that sprung from ASARCO'S bankruptcy and sought compensation for the preparation and defense of its fee application and fee enhancement application. *Id.* at 294. The court noted that under § 330 of the Bankruptcy Code, "reasonable compensation for actual, necessary services rendered by the trustee, . . . professional person, or attorney . . . and reimbursement for actual necessary expenses may be awarded."[13] *Id.* at 295.

The Fifth Circuit affirmed the fee enhancement but stated that § 330(a) of the Bankruptcy Code does not allow compensation for the defending of a fee application. *Id.* at 299. Rather, the court analyzed § 330(a)(3), which states that relevant factors to consider when reviewing services rendered include services that are necessary or beneficial to the administration or completion of the case and "'whether the compensation is reasonable' by comparable

---

[13] "[T]he court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

    (A) the time spent on such services;

    (B) the rates charged for such services;

    (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

    (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

    (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

*In re ASARCO, L.L.C.*, 751 F.3d at 295.

practitioners in non-bankruptcy cases." ***Id***.  Additionally, the court recognized that §§ 330(a)(4) and (6) state "compensation is not allowed for services that were not reasonably likely to benefit the debtor's estate *or* necessary to case administration and [a]ny compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application."  Accordingly, the Fifth Circuit found that, based on the language in §§ 330(a)(3),(4) and (6), defense and preparation of a fee application are inherently different functions, and the defense of a fee application is not beneficial to the administration of the debtor's estate.  As such, the Fifth Circuit held that fees for defending a fee application may not be recovered under § 330. ***Id.*** at 299.

Although compensation for defending a fee application is prohibited under § 330, the rule set out in ***In re ASARCO*** does not apply to over-secured creditors seeking attorneys' fees and expenses under § 506(b).  While § 330 specifically states that no compensation is to be provided for services that are not "reasonably likely to benefit the debtor's estate or [are] [not] necessary to the administration of the case," § 506(b) makes no similar distinction.  Rather, § 506(b) states "any reasonable fees, costs, or charges" may be recoverable – thus, there is no requirement that the fees be necessary to the administration of the case.  The absence of this requirement for over-secured creditors follows logic as counsel for the creditor is not concerned with case administration, but rather with protection of his client's interests.  This Court, therefore, concludes that a plain reading of § 506(b) distinguishes it from the requirements of § 330 discussed in ***In re Asarco***.  The Court finds that the Fifth Circuit's holding in ***In re Asarco*** does not prohibit an award of reasonable fees to an over-secured creditor under § 506(b) for defending its fee application.

Prior to the ***ASARCO*** opinion, several courts held that the preparation and defending of a fee application is recoverable under § 506(b).  In ***In re Delaney Family L.P.***, although

reducing the fees requested due to the economies and nature of the case, the court allowed recovery of attorneys' fees under § 506(b) for the preparation and presentation of its fee application. 02-46631-DML-11, 2003 WL 23957146, at *8 (Bankr. N.D. Tex. Dec. 11, 2003); *see also In re Am. Freight Sys., Inc.*, No. 88-41050-11, 1997 WL 309123, at *5 (D. Kan. May 6, 1997) (Although affirming bankruptcy court's reduction of fees, the district court noted compensation for work preparing and defending a fee application is allowed under § 506(b).). Because the Court concludes that §§ 506(b) and 330 are inherently different, the holding in *In re ASARCO* is not binding on the Trust's § 506(b) fee application. Therefore, the Trust will be allowed to recover its attorneys' fees and expenses for the preparation and defense of its fee application.[14]

## III. Post-Petition Default Interest and Late Charges

The Trust also asserts entitlement to post-petition default interest under the Loan Documents. The Court previously ruled that the Trust was not entitled to pre-petition default interest under the Loan Documents because the Loan Documents only allow default interest if there is a missed payment under the Note – which required acceleration under the Note in that instance – and the Trust did not accelerate the Note. (*See* ECF No. 157). The Court noted that the ruling on pre-petition default interest was not dispositive on the Trust seeking to collect post-petition default interest. (*See* ECF No. 157, p. 7 n. 5) ("The Court also does not address any claims the Trust may have for post-petition default interest or any ability it may have to accelerate the debt post-petition.").

---

[14] The Trust has already included billing for preparation of its fee application in its request and submitted time records. Additionally, as the Court will award the full amount of $16,250.00 requested by lead counsel for estimated fees and expenses from September 9, 2014 to the Effective Date of the Plan, fees for appearance at the hearing on the Trust's Motion are already accounted for in that amount. Accordingly, the Court need not calculate a further award of fees for the time spent at the hearing held September 17, 2014.

An over-secured creditor is allowed to recover post-petition interest in a bankruptcy claim under § 506(b). *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989). The Trust asserts entitlement to default interest upon a payment default under the Loan Documents. Section 2.3 titled "Default Interest" of the Note states:

> Time is of the essence with respect to the times set forth herein for the repayment of the principal amount and the interest thereon. Should the (i) interest and principal payable hereunder in any month not be promptly paid in full on or before the fifth (5th) day following the payment date occurring in such month, or (ii) the principal amount or any part thereof, together with any other amounts due and payable hereunder, not be promptly paid on the maturity date or earlier date when the same shall be due and payable (whether by acceleration or otherwise)….

(Trust's Ex. A, p. 11). Section 12.4 of the Deed of Trust also bases the collection of default interest on the event of a defaulted payment. Section 12.4 of the Deed of Trust provides:

> If any amount due under the Note, this Deed of Trust or any of the other Loan Documents is not paid within any applicable notice and grace period after same is due, whether such date is the stated due date, any accelerated due date or any other date or at any other time specified under any of the terms hereof or thereof, then in such event, Borrower shall pay interest on the entire outstanding and unpaid principal balance of the Debt from and after the date on which such amount first becomes due at the Default Rate of interest; and such interest shall be due and payable at such rate until the earlier of the cure of all Events of Default or the payment of the entire amount due to Lender, whether or not any action shall have been taken or proceeding commenced to recover the same or to sell the Property… .

(Trust's Ex. A, p. 98). As such, under Section 2.3 of the Note and Section 12.4 of the Deed of Trust, default interest is based on the premise that a default on a payment has occurred.

The Trust contends that the Debtor defaulted by failing to make its January 1, 2013, payment. Pursuant to the Note, Section 2.3 provides that the Debtor must make the monthly payment on or before the fifth (5th) day following the monthly payment due date. Additionally, Section 2.1 of the Note states that any payments that become "due and payable . . . on a day which is not a business day, such payments are and shall be due and payable on the next succeeding business day." (Trust's Ex. A, p. 10). According to Section 1 of the Note, a business

day is defined as each Monday thru Friday, "which is not a day on which state or national banks in the City of New York, New York are authorized, or obligated, by law or executive order to be closed." (Trust's Ex. A, p. 9). The payment in dispute was due on Tuesday, January 1, 2013, a holiday. Because January 1, 2013, was a holiday, the next business day was Wednesday, January 2, 2013. As provided by the language in the Note, Debtor is entitled to a five day "grace period" before a default in payment has occurred. Therefore, the fifth day following January 2, 2013, is Monday, January 7, 2013, the day Debtor filed this Chapter 11 bankruptcy case and the automatic stay was set in place. Thus, no pre-petition default in payment occurred. As such, the Court holds that the Trust is not entitled to receive post-petition default interest, as no default in payment occurred prior to the Debtor filing bankruptcy. Accordingly, under the Loan Documents, the Trust is not entitled to receive post-petition default interest in the amount of $41,038.15.

Additionally, the Trust asserts entitlement to late charges under Section 4.5 "Late Charges" of the Note. Section 4.5 states, in part:

> To the extent permitted by applicable law, in addition to any interest which may be charged hereunder, maker shall pay to holder a charge ("Late Charge") for the collection of late payments in an amount equal to five percent (5.0%) of any payment required hereunder … which is not paid within five (5) days after the date such payment is due.

(Trust's Ex. A, p. 16). A plain reading of the Note clearly states late charges are to be collected after a payment is not made within five days after the payment's due date. Because the collection of late charges under Section 4.5 of the Note, requires that a payment default occur, and no such default occurred prior to the Debtor filing its Chapter 11 bankruptcy petition, the Trust is also not entitled to receive late charges.

24

CONCLUSION

For these reasons, this Court is of the opinion that the Trust's Motion for Allowance of Post-Petition Amounts and to Value the Collateral shall be GRANTED, in part, and DENIED, in part. The Court concludes the following:

1) Pursuant to the parties' Joint Stipulation, the value of the Collateral is at least equal to $1,200,000.

2) Pursuant to the parties' Joint Stipulation, post-petition contract interest accruing at the Note rate of 10.4% from the Petition Date to Confirmation Date is allowed in the amount of $103,005.76.

3) Late Charges under the Note are disallowed in any amount.

4) Reimbursement of Appraisal Expenses in the amount of $9,750.00 are disallowed.

5) Post-petition default interest in the amount of $41,038.15 is disallowed.

6) Local counsel's fees and expenses in the amount of $52,730.28 are allowed in their entirety. Local counsel's request for estimated fees and expenses of $3,750.00 from August 31, 2014, through Effective Date of the Plan are also allowed.

7) Lead counsel's fees and expenses shall be allowed in the amount of $261,330.62, which reflects deductions of: $13,827.25 relating to disallowed travel billing, and $7,262.00 relating to fees that are disallowed as a consequence of the Wrong Allonge being provided to Debtor. Lead counsel's request for estimated fees and expenses of $16,250.00 from September 9, 2014, through Effective Date of the Plan are also allowed.

8) Post-petition environmental survey fees in the amount of $3,100.00 are allowed.

9) Post-petition title report fees in the amount of $992.00 are allowed.

10) Post-petition miscellaneous items in the amount of $145.00 are allowed.

Therefore, the Court's final award of post-petition amounts to the Trust shall total $441,303.66, a reduction of $97,463.79 from the Trust's requested amounts.

# # #